**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MICHAEL DOUGLAS MACDOUGALL,

        Plaintiff,

v.                                           Case No. 3:13-cv-98-J-34JRK

CITY OF ST. AUGUSTINE, FLORIDA, et al.,

        Defendants.
_____/

**O R D E R**

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss and Supporting Memorandum of Law (Doc. No. 20; City Motion) filed on October 30, 2013, and Defendants' State of Florida and Shipp Motion to Dismiss (Doc. No. 21; State Motion) filed on November 4, 2013 (collectively Motions). Plaintiff filed a single response to both Motions on November 22, 2013. See Response to Motion to Dismiss (Doc. No. 22; Response). With the Court's leave, see Order (Doc. No. 28), all Defendants except the State of Florida and Thomas Shipp filed a reply to the Response. See Defendants' Reply in Support of Defendants' Motion to Dismiss (Doc. No. 29; Reply). Accordingly, the Motions are ripe for judicial review.

**I.    Standard of Review**

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr.,

Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680-81. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678

(quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[1] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 706 (11th Cir. 2010)).

## II.   Extrinsic Evidence

At the outset, the Court notes that Defendants, the City of St. Augustine (City), Joseph Boles, James Piggot, John Regan, Ronald Brown, Donald Crichlow, and Commander Stephen Fricke (collectively City Defendants),[2] submitted several exhibits in support of the City's Motion. See generally City Motion, Ex. 1-6. When a party moves to dismiss under

---

[1] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[2] Plaintiff MacDougall brings this suit against the above individual Defendants in their official capacities: Boles, in his capacity as Mayor of the City, Piggot as Director of General Services for the City, Regan as City Manager, Brown as City Attorney, Crichlow as former City Commissioner, and Fricke as the City's Chief of Police. "[W]here a plaintiff brings an action against a public official in his official capacity, the suit is against the office that official represents, and not the official himself." Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995). Thus, the Court refers to the City Defendants collectively. Additionally, the Court notes that the City Defendants contend that Fricke is an improper party because MacDougall designated him as the Chief of Police when he has never served in that capacity. See City Motion at 2 n.2, 5 n.3. MacDougall responds that he improperly referred to Fricke as the Chief of Police but that he "is in charge of local law enforcement on the AICW for the City." Response at 14. Because suit against all of the City Defendants is suit against the City itself, and the City Defendants do not contend that Fricke cannot be sued as a representative of the City nor do they separately move for dismissal of Fricke as a Defendant, the Court need not determine Fricke's official title with the City to resolve the instant Motions.

Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and matters outside of the pleadings are presented to and not excluded by the court, the motion is ordinarily treated as if it were a motion for summary judgment under Rule 56. SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); Jones v. Auto. Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1531-32 (11th Cir. 1990).  Nevertheless, the Eleventh Circuit has instructed that a district court may consider extrinsic evidence in ruling on a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, 600 F.3d at 1337; see also Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267-68 (11th Cir. 2002).  The Court, in its discretion, declines to consider any documents beyond those which comply with the above exceptions, and thus, the City's Motion will not be converted to a motion for summary judgment. Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1232 (11th Cir. 2010); Jones, 917 F.2d at 1531-32.

Upon review of the City Motion, the Court notes that among the exhibits the City Defendants have submitted are certain public records.[3]  City Motion, Exs. 1-5.  Under appropriate circumstances, a court may take judicial notice of and consider documents attached to a motion to dismiss or response, which are public records that are "central" to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment.  This is so, as long as such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.'" Horne v. Potter, 392

---

[3] Exhibit 6 to the City Motion is a copy of a Florida statute enacted in 1925 establishing the municipality known as the City of St. Augustine and delineating its boundaries.

F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)).  Moreover, "a court may take notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."  United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).  Exhibits 1-5 attached to the City Motion are documents that were filed in the prior state court proceedings in which the state court addressed Plaintiff Michael Douglas MacDougall's claims, therefore, they are public records not capable of reasonable dispute, and appropriate for judicial notice.  Horne, 392 F. App'x at 802 ("The district court properly took judicial notice of the documents in [plaintiff's] first case . . . .").  Moreover, because the state court proceedings are central to MacDougall's claims in this action, the Court will consider these documents in ruling on the Motion to Dismiss.  Talley v. Columbus, Ga. Hous. Auth., 402 F. App'x 463, 465 n.4 (11th Cir. 2010) ("Although the district court was ruling on a motion to dismiss, the court properly examined extrinsic documents detailing [plaintiff's] previous state and federal court cases that related to the condemnation of his property: the cases were central to [plaintiff's] instant federal claim.").[4]

**III.   Background**

MacDougall, proceeding pro se, initiated this action on January 23, 2013, by filing an initial pleading entitled "Complaint Action for Delaratory [sic] Judgment and Summons" (Doc. No. 1).  Seeking to avoid paying the filing fee, MacDougall also filed an Affidavit of Indigency (Doc. No. 2), which the Court construed as a Motion to Proceed In Forma Pauperis and took under advisement, directing MacDougall to file an amended complaint and complete a

---

[4] Additionally, to the extent that the City Motion raises a factual attack on the Court's lack of subject matter jurisdiction, the Court may consider matters outside the complaint.  Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1071 n.2 (11th Cir. 2013).

second indigency form.  See Order (Doc. No. 6).  MacDougall complied with the Court's directives and filed an amended "Complaint Action for Delaratory [sic] Judgment and Summons" (Doc. No. 7; Complaint) as well as the additional form.  See Application to Proceed in District Court without Prepaying Fees or Costs (Doc. No. 8).  The Court thereafter permitted MacDougall to proceed in forma pauperis.  See Order (Doc. No. 9).

In his Complaint, MacDougall alleges that the City has issued citations to him based on his failure to anchor his boat in a location that complies with section 7-93 of the Code of the City of St. Augustine (Section 7-93).  Complaint at 4.  He contends that he "is currently being sued in the County Court, Seventh Judicial Circuit in St. Johns County Florida for a permanent mandatory injunction." Id.  MacDougall contends that he has a legally registered vessel anchored thirty-nine feet "outside of the marked channel in the San Sebastian River of St. Augustine." Id.  However, he alleges that Section 7-93, pursuant to the authority under section 327.4105, Florida Statutes, prohibits the anchoring of any vessel within fifty feet of that marked channel.  See id. at 4-5.  MacDougall contends that Section 7-93, which also restricts anchorage during certain times of day, for periods longer than thirty consecutive days, and without a medallion which MacDougall contends is essentially a license, obstructs his right to navigate the waters of the United States, and violates federal laws and the Constitution of the United States.  See id. at 4-5.

In each Count of the Complaint, MacDougall identifies an aspect of Section 7-93 that purportedly conflicts with federal law.  Specifically, in Count One of the Complaint, MacDougall alleges that the restrictions regarding anchoring in Section 7-93 violate the public rights of navigation and exceed the scope of the City's authority because the authority

to regulate navigable waters is exclusively federal. See id. at 7-9. In Count Two of the Complaint he argues that Section 7-93 illegally imposes a license requirement on the use of the navigable waterway. See id. at 10. As to Count Three, MacDougall contends that the anchorage requirements violate Congress's exclusive authority to regulate commerce. See id. at 11-12. Lastly, in Count Four, MacDougall more generally alleges that "City policy, as it relates to management of the Municipal mooring fields, violates Constitutional rights to equal treatment and enforcement of the law." Id. at 12.

In his prayer for relief, MacDougall globally requests "a declaratory judgment that the State of Florida and the City of St. Augustine's refusal to allow anchorage in the navigable waters of the United States and in particular within the interstate waterways and its tributaries is repugnant to United States law and is null and void." Id. at 13. Additionally, he requests a declaration that MacDougall "has the right to navigate all the waters of the United States including the interstate waterways and its tributaries unless prohibited by federal law," and that "the particular location of plaintiff's vessel lies within a direct tributary of the Atlantic Intra Coastal Waterway thereby affording it all the legal and maritime protections entitled to the interstate waterway it self [sic]." Id. at 13-14.

Prior to MacDougall's filing of the instant suit, the City initiated a non-criminal proceeding in the County Court of the Seventh Judicial Circuit, in and for St. Johns County, Florida in Case No. 12000066MOMA (the State Action), charging MacDougall with the "violation of vessel anchorage mooring field regulation (7-93)." See Exhibit 1 to City Motion.[5]

---

[5] Rather than file the actual citation against MacDougall, the City Defendants submit the City's Notice of Filing Certified Copy of Motion to Amend Proposed Ordinance 2011-10, Ordinance 2011-10 and Notice of Public Hearing for Ordinance 2011-10 (Doc. No. 20-1). However, the Court gleaned the above information from the case style. Additionally, the Court notes that MacDougall refers in his

On March 2, 2012, the City issued MacDougall a citation for violating Section 7-93 by anchoring his vessel approximately thirty-two feet from the navigational channel in the San Sebastian River. See Amended Order, Exhibit 2 to City Motion (Doc. No. 20-2; State Court Order) at 1. The county court held a hearing on April 30, 2012, at which MacDougall, several representatives of the City, and two City law enforcement officers were present. Id. at 1-2. During this hearing, the county court received evidence and heard argument from the City regarding the "foundation for the enactment and enforcement of the ordinance." Id. at 2. In turn, MacDougall "presented legal argument challenging the constitutionality of the ordinance based on federal navigation rights" and was given an opportunity to provide legal support for his argument. Id. MacDougall did so on June 1, 2012, and the county court held an additional hearing on June 4, 2012, to address the legal issues both parties raised. See id. Shortly after the second hearing, on June 8, 2012, the county court entered its State Court Order, concluding that the "City of St. Augustine did lawfully enact municipal code section 7-93, pursuant to section 327.4105, Florida Statutes (2011), and consistent with section 327.60 Florida Statutes (2011), and Barber v. State of Hawaii, 42 F.3d 1185 (9th Cir. 1994)." Id. (footnote omitted). The county court also held that MacDougall caused his vessel to be anchored in violation of Section 7-93 on March 2, 2012, and ordered him to pay a fine of $128.00 along with court cost and fees of $40.00. See id. at 2-3.[6]

---

Complaint to another action, Case No. CC12-1894, which the City appears to have initiated after the resolution of the State Action. See Complaint at 4.

[6] In his Response, MacDougall contends that the City agreed to waive the fine to prevent him from challenging Section 7-93 in a separate civil suit in state court and such a waiver constitutes a violation of his right to equal protection under the law. See Response at 1-3. It is unclear what legal basis would prevent MacDougall from making such a challenge based on the waiver of a fine in the State Action. Nevertheless, assuming the payment of the fine was a prerequisite to filing suit as MacDougall

On July 12, 2012, MacDougall attempted to file a notice of appeal of the State Court Order. See Notice of Appeal, Exhibit 3 to City Motion (Doc. No. 1-3; Notice). However, the circuit court struck the Notice and dismissed the appeal because MacDougall did not timely file the Notice and the appellate court lacked jurisdiction. See Order on Appellee's Motion to Strike Notice of Appeal and Dismiss the Appeal, Exhibit 4 to City Motion (Doc. No. 20-4). MacDougall then moved to reinstate the appeal on July 27, 2012, but the circuit court denied that motion on August 2, 2012, because he filed the Notice more than thirty days after the State Court Order, and he was not entitled to any additional time to file his appeal under the Florida Rules of Appellate Procedure. See Order on Appellant's Motion to Reinstate Case, Exhibit 5 to City Motion (Doc. No. 20-5). Almost six months later, MacDougall filed the instant action seeking a declaration invalidating Section 7-93.

### IV.    **Rooker-Feldman** **Doctrine**

In the Motions, the City Defendants[7] argue that MacDougall is asking this Court to review a state court judgment and this Court therefore lacks subject matter jurisdiction over

---

suggests, the City agreed to waive the fine on the condition that MacDougall remove his vessel within seven days of the date of the State Court Order, comply with all the aspects of the regulation, and provide the City with proof of his compliance. See State Court Order at 3. Therefore, to the extent MacDougall contends that the City's alleged waiver would deny him some right, he need only fail to move his vessel or otherwise fail to comply with Section 7-93 to assure the right was not waived.

[7]    Defendants, the State of Florida and Thomas Shipp in his official capacity (the State Defendants), adopt and incorporate the arguments in the City Motion into the State Motion. State Motion at 1. Although the State Defendants were not parties to the State Action, MacDougall brings this suit against them only to the extent that he seeks to prevent the enforcement of Section 7-93. "Complete identity of the parties is unnecessary if each parties' interests were represented in the state proceeding." Van Benthuysen v. Florida, No. 8:10-cv-1646-T-23AEP, 2010 WL 5060877, at *2, n.1 (M.D. Fla. Dec. 6, 2010).

this case under Rooker-Feldman.[8]  See City Motion at 2-5, 8-10.  "The Rooker-Feldman doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court."  Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009) (citing Feldman, 460 U.S. at 482).  Under the Rooker-Feldman doctrine, "[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision."  Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997).  Prior to the Supreme Courts' decision in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Eleventh Circuit applied the doctrine when (1) the parties in federal court are the same as in state court; (2) the final state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.  Storck v. City of Coral Springs, 354 F.3d 1307, 1310 n.1 (11th Cir. 2003).  In Exxon Mobile, the Supreme Court cautioned "that the Rooker-Feldman doctrine 'has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases.'"  Cormier v. Horkan, 397 F. App'x 550, 552 (11th Cir. 2010) (per curiam) (quoting Exxon Mobil, 544 U.S. at 283).  Thereafter, the Eleventh Circuit receded from the above four-part test in favor of a two-part inquiry.  See id.

     First, the Court must determine whether the state court proceedings have ended by

---

[8] See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

applying the three tests the Eleventh Circuit adopted in Nicholson v. Shafe, 558 F.3d 1266 (11th Cir. 2009). Velazquez v. S. Fla. Fed. Credit Union, 546 F. App'x 854, 856 (11th Cir. 2013) (per curiam). A case in state court has ended:

> (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the state action has reached a point where neither party seeks further action, and (3) if the state proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated.

Id. at 857 (quoting Nicholson, 558 F.3d at 1275). Second, the Court considers whether the plaintiff is a state court loser who is complaining of injuries a state court judgment caused and inviting review and rejection of those judgments. Id. at 856-57 (quoting Exxon Mobil, 544 U.S. at 284). In making this determination, the Eleventh Circuit still applies the fourth factor of its earlier test—"evaluating whether the plaintiff's claims are 'inextricably intertwined' with the state court judgment." Cormier, 397 F. App'x at 553 (quoting Casale, 558 F.3d at 1260)). "A claim is inextricably intertwined if it would 'effectively nullify' the state court judgment, or it 'succeeds only to the extent that the state court wrongly decided the issues.'" Casale, 558 F.3d at 1260 (internal quotations omitted).

In this case, the State Court Order was entered on June 8, 2012. See State Court Order at 3. Although MacDougall attempted to appeal it, he did so only after the time to file a notice of appeal had lapsed. Because the time for appeal expired thirty days after the entry of the State Order, the State Action ended at that time. See Velazquez, 546 F. App'x at 857. Therefore, the first Rooker-Feldman inquiry is met.

Further, MacDougall, the defendant in the State Action, unsuccessfully challenged the

validity of Section 7-93 in the State Action.[9]  There, the State Court Order reflects that he "presented legal argument challenging the constitutionality of the ordinance based on federal navigation rights."  State Court Order at 2.  In the Complaint, MacDougall raises similar arguments regarding his rights to use navigable waters without interference from local governments.  Indeed, in his Response, MacDougall does not dispute the fact that the county court previously decided these issues, stating:

> In an attempt to defend his constitutionally guaranteed rights of navigation, MacDougall, presented the court with a defense which included U.S. codes of Federal Regulation, Supreme Court decisions, and U.S. Constitutional Law.  The case was lost in spite of the federal protections pointed out to the court.  Federal Maritime law was not enforced and State Law was allowed to trump federal regulation.

Response at 1.  Although it is unclear whether MacDougall raised all of his arguments regarding the validity of Section 7-93 from the State Court Order, such as his argument that Section 7-93 interferes with Congress's authority to regulate interstate commerce, the Rooker-Feldman "doctrine applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment" so long as the plaintiff had a reasonable opportunity to raise those federal claims in the state proceeding.  Casale, 558 F.3d at 1260; see also Velazquez, 546 F. App'x at 858 ("Rooker-Feldman may bar federal jurisdiction even where federal claims were not fully addressed by the state court so long as 'those [federal claims were] inextricably intertwined with the state court's judgment.'"); Jallali v. Am. Osteopathic Ass'n, No. 11-60604, 2011 WL 2601257, at *5 (S.D. Fla. June 30, 2011)

---

[9]  MacDougall suggests that Rooker-Feldman cannot apply because he was the defendant in the State Action, not the plaintiff.  However, he cites to no authority to support such a distinction and Rooker-Feldman applies to state court losers, regardless of which side they were on in the state court proceedings.  See, e.g., Casale, 558 F.3d at 1259-60 (affirming dismissal under Rooker-Feldman where the plaintiff had been the defendant in a contempt proceeding).

("Rooker-Feldman extends to claims that 'could have been raised in the state courts.'" (quoting Johnson v. Baker, No. 08-11589, 2008 WL 4657823, at *1 (11th Cir. Oct. 20, 2008))).

The county court in the State Action gave MacDougall ample opportunity to raise his constitutional arguments regarding Section 7-93 both in writing and in person. See State Court Order at 1-2.  After doing so, the county court ruled that the City lawfully enacted the ordinance and that MacDougall had violated it.  See id. at 2-3.  Having failed to pursue a timely appeal, MacDougall appears before this Court as the party who lost in state court asking for what he failed to get in state court, a declaration that Section 7-93 is not valid and that he has a constitutional right to anchor his vessel where he chooses.  See generally Complaint. Indeed, MacDougall's Response makes clear that it is his contention that he lost in the State Action "in spite of the federal protections pointed out to the court." Response at 1.  In other words, MacDougall believes he lost because the State Court Order ignores federal law, and is thus incorrect.  However, it is well settled that "a state court's 'interpretation of federal law is no less authoritative than that of the [corresponding] federal court of appeals.'" Casale, 558 F.3d at 1260 (quoting Powell v. Powell, 80 F.3d 464, 467 (11th Cir. 1996)).

Moreover, a judgment in MacDougall's favor "would imply that the state court wrongly decided the issues before it" and thus, his claims are "inextricably intertwined" with the State Court Order. See Blankenship v. Childers, No. 3:12cv216/MW/EMT, 2013 WL 6536827, at *5 (N.D. Fla. Nov. 14, 2013).  Indeed, MacDougall prevails in this action only if the Court determines that the state court resolved the issues before it erroneously.  If MacDougall felt

that the court incorrectly decided the constitutionality of Section 7-93, then he could have filed a timely appeal. As the Eleventh Circuit in Casale explained:

> If Casale believed the state court's result was based on a legal error, the proper response was the same one open to all litigants who are unhappy with the judgment of a trial court: direct appeal. We are not a clearinghouse for Casale's overstock arguments; if he did not offer them to the state courts—or if the state courts did not buy them—he cannot unload them by attempting to sell them to us. Casale is just the sort of "state-court loser[]" the Rooker-Feldman doctrine was designed to turn aside. See Exxon Mobile, 544 U.S. at 284.

Casale, 558 F.3d at 1261. The Court finds that the issues MacDougall raises in this Complaint were decided or could have been decided by the county court in the State Action, and that by this action he is, in essence, seeking a reversal of the State Court Order. Accordingly, the Court does not have jurisdiction over MacDougall's claims pursuant to the Rooker-Feldman doctrine, and his Complaint is due to be dismissed, without prejudice.[10]

In light of the foregoing, it is

**ORDERED:**

1. Defendants' Motion to Dismiss and Supporting Memorandum of Law (Doc. No. 20) is **GRANTED**.

2. The Complaint (Doc. No. 7) is **DISMISSED without prejudice.**

---

[10] The Court notes that MacDougall has previously been given the opportunity to file an amended complaint, see Order (Doc. No. 6), and that he has not requested further leave to amend, nor suggested how he might amend his Complaint to cure the deficiencies identified in this Order. See generally Response. As such, the Court will dismiss his Complaint without prejudice.

3. Defendants' State of Florida and Shipp Motion to Dismiss (Doc. No. 21) is **GRANTED** to the extent that the Complaint is dismissed for lack of subject matter jurisdiction. Otherwise, the Motion is **DENIED**.

4. The Clerk of the Court is directed to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 16th day of September, 2014.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc16

Copies to:
Counsel of Record
Pro Se Party